UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS H. KINGSMILL, III | CIVIL ACTION |
| V. | NO. 09-6787 |
| LOUISIANA HEALTH SERVICE & INDEMNITY CO D/B/A BLUECROSS BLUESHIELD OF LOUISIANA, ET AL | SECTION "F" |

ORDER & REASONS

Before the Court are the parties' presentations on three threshold issues set out in the Court's case management order.

**Background**

The facts of this case are familiar. This case centers on a dispute over health benefits coverage. Thomas H. Kingsmill, the plaintiff, seeks reimbursement for inpatient treatment at the Menninger Clinic under the Kingsmill Riess, LLC Employee Welfare Benefit Plan.[1]

Magellan Health Services, Inc. moved the Court for summary judgment on September 30, 2010, claiming (1) the plaintiff had sued the wrong Magellan entity; (2) either Magellan or the correct company, Magellan Behavioral Health, did not abuse its discretion by denying plaintiff's claim for benefits; and (3) ERISA preempted

---

[1] Kingsmill Riess established the plan for the purpose of providing medical benefits to its employees and their covered dependents and was funded through the purchase of a Group PPO Comprehensive Medical Benefits Plan from Blue Cross. The plaintiff received his benefits under the plan as his wife's covered dependent.

plaintiff's state law claims.  The Court denied Magellan's motion in part, but dismissed the state law claims plaintiff asserted against Magellan Health, agreeing on ERISA preemption.

Magellan and the defendant Louisiana Health Service & Indemnity Co. d/b/a BlueCross BlueShield of Louisiana again moved for summary judgment, and the Court denied both motions without prejudice, continued the trial upon the parties' request, and ordered the parties to prepare a case management order setting out threshold issues to be resolved through cross-briefs.  The Court approved the parties' case management order as proposed, which requires them to brief the following threshold issues:

> (1) Under the Kingsmill Riess, LLC Employee Welfare Benefit Plan, was Mr. Kingsmill entitled to a second-level review before he initiated an external review of the decision to deny coverage, as not medically necessary, his inpatient medical treatment at The Menninger Clinic?
>
> (2) Does the Medical Necessity Review Organization (MNRO) Act of Louisiana require a third level of appeal, or does ERISA preempt the review requirements of the MNRO?
>
> (3) Does an agreement between Blue Cross and Magellan Behavioral entitle Kingsmill to the three levels of review he seeks of the decision to deny benefits as not medically necessary of his inpatient medical treatment at Menninger?

The Court turns to these questions.

**<u>Law and Analysis</u>**

I.

*Under the Kingsmill Riess, LLC Employee Welfare Benefit Plan, was Mr. Kingsmill entitled to a second-level review before he initiated an external review of the decision to deny coverage, as not medically necessary, his inpatient medical treatment at The Menninger Clinic?*

A.

The plaintiff asserts that under his health benefits plan, he had the right to a second-level internal review of the decision to deny benefits before an outside review took place by an independent review organization. The defendants contend that, under the Plan's plain language, Kingsmill was not entitled to a second internal review before receiving an independent external review of the denial of benefits for his inpatient medical treatment at The Menninger Clinic. The plaintiff essentially asserts his Plan entitled him to three levels of review; the defendants counter that he was entitled only to two levels of review. The Court agrees. Kingsmill was entitled to two levels of review under the Plan: the first level and an optional second level before an independent review organization.

B.

The Plan sets out the following appeals process for ERISA members:

> If a Member is an ERISA Member, we offer the Member two (2) levels of appeal. The Member is required to complete the first level of appeal prior to instituting any civil action

3

under ERISA section 502(a). The second level of appeal is voluntary.

The two (2) levels of review for administrative Appeals will be internal. The first level of review for Medical Necessity Appeals will be internal and an external Independent Review Organization (IRO) that is not affiliated with Us will handle the second voluntary level of review.

. . .

First Level of Internal Appeal (Mandatory prior to instituting legal action)

[Sets out requirements for the first level of appeal.]
. . .

Second Level Administrative Appeal (Voluntary)
Within sixty (60) calendar days of the date of Our first level administrative Appeal decision, a Member who is not satisfied with the decision may initiate a voluntary second level of Appeal process. . . .

It is not necessary to complete this voluntary process in order to bring a civil action under ERISA section 502(a). . . . The Member's decision whether or not to submit to this voluntary level of review will have no effect on the Member's rights to any other benefits under the plan. . . .

The second level appeal will involve a committee review not previously involved in the Member's claim determination. . . . The result of this committee is the final review decision for claims not involving medical necessity determinations.

Second Level Medical Necessity Appeal (Voluntary)
Within sixty (60) calendar days of the date of Our first level Medical Necessity Appeal decision, a Member who is not satisfied with the decision may initiate a voluntary second

4

>level of Appeal process. . . .
>
>If the Member wishes to elevate his Appeal of a Medical Necessity denial to the second and final level, a non-affiliated external IRO will perform the Member's review.  It is not necessary to complete this voluntary process in order to being a civil action under ERISA section 502(a). . . .
>
><u>The Member's Provider may make the request for an expedited external review if the Member's medical condition is of an urgent or emergent nature</u> . . .
>
>The Member may request this level of Appeal by sending a written request for an external review to Us within sixty (60) days of receipt of a level one denial.

The plain language of the Plan structures a two-tiered scheme of administrative appeals in all circumstances and distinguishes between "Administrative Decisions" and "Medical Necessity Decisions."  In both types of decisions, the employee receives a first level appeal, which is a precondition to bringing suit under ERISA.  But, depending on the type of decision, the second level of appeal varies.  In Medical Necessity determinations such as the plaintiff's, the second level of appeal differs; it is external and is to be pursued at the option of the plaintiff within sixty calendar days of receiving the first-level Medical Necessity decision.[2]

In summary, the Plan entitles the plaintiff only to a first-

---

[2] The Court observes that the Plan's appeals process complies with ERISA.  <u>See</u> 29 C.F.R. § 2560.503-1(c)(2),(c)(3),(h)(3).

level internal appeal and a second-level external appeal.

II.

*Does the Medical Necessity Review Organization (MNRO) Act of Louisiana require a third level of appeal; or does ERISA preempt the review requirements of the MNRO?*

The plaintiff asserts that ERISA neither preempts the law nor the rules of a state that regulate insurance; the defendants contend that the Louisiana MNRO Act does not apply to ERISA-governed health benefit plans, including the Kingsmill-Riess Plan. In the Court's Order of October 19, 2011, the Court found that ERISA preempts all of the plaintiff's state law claims because they duplicate what ERISA has already provided: a claim for improper denial of benefits. As it did in its prior Order, the Court finds that to the extent the plaintiff seeks to recover benefits under the Plan, ERISA preempts any state law claims he has raised. But to the extent the plaintiff seeks to enforce provisions of the state MNRO Act, requiring a third level of appellate review, the Court finds that ERISA preemption does not apply.

A.

The state MNRO Act purports "to establish the minimum standards required for any entity that determines what medical services or procedures will be covered under a health benefit plan based on medical necessity." LA. REV. STAT. ANN. § 22:1121(D). It requires all MNROs to "implement a written medical necessity determination program that describes all review activities

performed for one or more health benefit plans," which must include "[t]he process for conducting appeals of adverse determinations." Id. § 22:1126(A). The Act requires that an insurer allow three tiers of review of an adverse decision of a medical necessity claim. See id. §§ 22:1130-1132. The first and second levels are internal, see id. §§ 22:1130-1131, but the third level is external, and must be conducted by an independent review organization. Id. §§ 22:1132(A). The MNRO Act applies to this dispute "unless [the Plan is] preempted as an employee benefit plan under [ERISA]." Id. § 22:1122(27).

B.

ERISA expressly exempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a) (2006), but does not "exempt or relieve any person from any law of any State which regulates insurance." Id. § 1144(b)(2)(A). "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," and "[t]he term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." Id. § 1144(c)(1),(2). A state law regulates insurance if (1) it is specifically directed toward entities engaged in insurance and (2) substantially affects the risk pooling

7

arrangements of insurer and insured.  See, e.g., Benefit Recovery, Inc. v. Donelon, 521 F.3d 326, 330 (5th Cir. 2008).  With respect to the first prong, it cannot be disputed that the MNRO Act is a state law specifically directed toward entities engaged in insurance.

The risk pooling prong is satisfied "whenever a law 'alters the scope of permissible bargains between insurers and insured.'" Id. (quoting Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 339 (2003)).  The U.S. Fifth Circuit Court of Appeals has indicated that in determining whether a law "'alters the scope of permissible bargains,'" a helpful touchstone is whether the state law "sets out, *ab initio*, what terms are acceptable in insurance contracts."  Id. at 331 n.8.  But where the "state-law cause of action . . . duplicates, supplements, or supplants the ERISA civil enforcement *remedy*[, it] conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted."  Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (emphasis added); see id. 214 n.4 ("[A] state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress's clear intent to make the ERISA mechanism exclusive.").  This distinction recognizes that "[u]nder ordinary principles of conflict pre-emption, . . . even a state law that can arguably be characterized as 'regulating insurance' [under § 1144(a)] will be pre-empted [under § 1132(a)]

if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." Id. at 217-18.

Applying these principles, the U.S. Supreme Court declared a state law was not preempted when it entitled an insured to demand of her insurer an independent medical review of her "medical necessity" claim. Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 361 (2002). That principle seems applicable here. Because the insured sought to compel the insurer's compliance with the state law, rather than enforce benefits under her insurance plan, the Supreme Court held that ERISA did not preempt the state law. See id. at 377 (acknowledging the tension between ERISA's preemptive force and ERISA's insurance savings clause).

Here, "[i]t is beyond serious dispute that [the MNRO Act] 'relates to' employee benefit plans within the meaning of § 1144(a) [because it] bears indirectly but substantially on all insured benefit plans by requiring them to submit to an extra layer of review for certain benefit denials." Id. at 366 (internal quotation marks and citations omitted). The plaintiff presumably seeks to enforce his right to a third level of appeal as provided under the MNRO Act. This seems not simply a disguised move to recover benefits under the Plan or otherwise enforce rights set out under the Plan. It is an argument that, for now, focuses a process

mandated by state insurance law.[3]

### III.

*Does an agreement between Blue Cross and Magellan Behavioral entitle Kingsmill to these three levels of review of the decision to deny coverage of, as not medically necessary, his inpatient medical treatment at Menninger?*

The plaintiff also seeks to rely on Magellan Behavioral's contract with Blue Cross to establish a right to an additional internal review of the decision to deny benefits; the defendants contend that the only contract entitling Kingsmill to a review of a benefits determination is his Plan.[4]  Because the Court has already found that the MNRO Act entitles the plaintiff to the limited additional review he seeks, this question is moot.

In summary, (1) the Plan provides the plaintiff only with two levels of appeal for the denial of a Medical Necessity Decision: a first-level internal review and a second-level external review; (2) ERISA preempts the plaintiff's state law claims to the extent

---

[3] The ERISA regulations instruct that claims procedures are reasonable "only if . . . [they] do not contain any provision, and are not administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section 502(a) of the Act."  29 C.F.R. § 2560.503-1(c)(2).  Allowing an insured access to a third level of appeal does not contradict this regulation.  It would only be if an insured was required to pursue all three levels of appeal before he could sue under ERISA that the MNRO Act's requirement would be unlawful.  Whether plaintiff is seeking as a matter of tactics to elevate procedure in place of substance is not addressed.

[4] The agreement between Blue Cross and Magellan Behavioral reflects the MNRO Act's requirements.

he seeks to recover benefits, but ERISA does not preempt the MNRO Act's optional three-tiered review of adverse decisions; and (3) the question of whether the agreement between Blue Cross and Magellan Behavioral establishes the same three tiers of review on appeal is moot.

New Orleans, Louisiana, June 23, 2011.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE