UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
THOMAS H. KINGSMILL                      CIVIL ACTION

Versus                                   NO.: 09-6787

LOUISIANA HEALTH SERVICE & INDEMNITY CO. SECTION: F
d/b/a BLUE CROSS BLUE SHIELD OF LOUISIANA
```

ORDER AND REASONS

Before the Court is the plaintiff's motion for partial summary judgment.  For the reasons that follow, the motion is DENIED.

**Background**

This case centers on a dispute over health insurance benefits coverage.  Thomas H. Kingsmill, the plaintiff, seeks reimbursement for inpatient treatment under the Kingsmill Riess, LLC Employee Welfare Benefit Plan.[1]  The Plan is administered by defendant Blue Cross Blue Shield.  Defendant Magellan Health Services, Inc., according to plaintiff, is a company that reviews delivery of mental health and substance abuse services in inpatient and intermediate care settings.  Magellan Behavioral Health, Inc., is a wholly-owned subsidiary of defendant Magellan

---

[1] Kingsmill Riess established the plan for the purpose of providing medical benefits to its employees and their covered dependents and was funded through the purchase of a Group PPO Comprehensive Medical Benefits Plan from Blue Cross Blue Shield.  The plaintiff received his benefits under the plan as his wife's covered dependent.

1

Health Services, with which Blue Cross Blue Shield contracted to provide certain administrative services.

Since June 2003, plaintiff has received treatment on an outpatient basis from Dr. Richard Roniger, a licensed psychiatrist practicing in New Orleans.  Around October 2008, Dr. Roniger recommended that plaintiff seek inpatient treatment for his depression and alcohol abuse.  Plaintiff was admitted to Methodist Hospital in Houston, Texas on October 1, 2008.  Six days later, he was discharged.  And then, on October 13, 2008, he was admitted to 24-hour care at the Menninger Clinic in Houston for more treatment.  Doctors performed a psychosocial assessment, history and physical examination, and laboratory studies. Plaintiff was released on November 25, 2008.

Around the start of plaintiff's stay, Menninger contacted either Magellan Health Services or Magellan Behavioral Health, and sought authorization of plaintiff's inpatient mental health treatment at Menninger starting on October 13.  The day after Menninger's request, either Magellan Health or Magellan Behavioral notified plaintiff and Menninger that his Plan did not authorize plaintiff's inpatient treatment.

Menninger initially declined to take a first-level appeal, and indicated it would seek review after plaintiff's discharge from treatment.  Menninger later requested a first-level appeal on plaintiff's behalf and submitted the complete medical and

clinical records related to plaintiff's inpatient treatment. Either Magellan Behavioral or Magellan Health apparently acknowledged receipt of the request and invited plaintiff and his medical providers to submit additional information about the services he received.

On March 5, 2009, either Magellan Behavioral or Magellan Health notified plaintiff that denial of coverage for his treatment at Menninger was upheld on appeal.  Plaintiff's counsel requested further review on May 4, 2009.  The decision was again upheld on June 16, 2009.

On October 13, 2009, plaintiff sued Blue Cross Blue Shield and Magellan Health Services.  He did not name Magellan Behavioral Health as a defendant in his complaint.  Magellan Health moved the Court for summary judgment on September 30, 2010, claiming (1) the plaintiff had sued the wrong Magellan entity; (2) either Magellan Health or the correct company, Magellan Behavioral, did not abuse its discretion by denying plaintiff's claim for benefits; and (3) ERISA preempted plaintiff's state law claims.  The Court denied Magellan Health's motion in part, because of a material fact issue as to which of either Magellan Health and Magellan Behavioral acted to deny plaintiff's benefits.  The Court also dismissed the state law claims plaintiff asserted against Magellan Health, agreeing on ERISA preemption.

Magellan Health and Blue Cross Blue Shield of Louisiana again moved for summary judgment, and the Court denied both motions without prejudice, continued the trial upon the parties' request, and ordered the parties to prepare a case management order setting out threshold issues to be resolved through cross-briefs.  The parties briefed the following threshold issues:

1)   Under the Kingsmill Riess, LLC Employee Welfare Benefit Plan, was Mr. Kingsmill entitled to a second-level review before he initiated an external review of the decision to deny coverage because his inpatient medical treatment at The Menninger Clinic was unnecessary?

(2)  Does the Medical Necessity Review Organization (MNRO) Act of Louisiana require a third level of appeal, or does ERISA preempt the review requirements of the MNRO?

(3)  Does an agreement between Blue Cross and Magellan Behavioral entitle Kingsmill to the three levels of review he seeks of the decision to deny benefits, as not medically necessary, of his inpatient medical treatment at Menninger?

In its Order and Reasons dated June 23, 2011, the Court found that:(1) the Plan provides the plaintiff only with two levels of appeal for the denial of a Medical Necessity Decision: a first-level internal review and a second-level external review; (2) ERISA preempts the plaintiff's state law claims to the extent he seeks to recover benefits, but ERISA does not preempt the MNRO

4

Act's optional three-tiered review of adverse decisions; and (3) the question of whether the agreement between Blue Cross and Magellan Behavioral establishes the same three tiers of review on appeal is moot.

Plaintiff now moves for partial summary judgment, arguing that he is entitled to attorney's fees because he has demonstrated some degree of success on his ERISA claim; that Magellan Health Services or Magellan HRSC was not authorized under Louisiana law to review his medical insurance benefits claim regarding plaintiff's treatment at Menninger, and that Blue Cross violated the Court's protective order by failing to file confidential information under seal.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court emphasizes that the mere argued existence of a factual

dispute does not defeat an otherwise properly supported motion. See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

## II. Discussion

### A.

Plaintiff argues that he is entitled to damages pursuant to ERISA and Hardt v. Reliance Standard Life Insurance Co., 130 S. Ct. 2149 (2010) because this Court found in its Order and Reasons of June 23, 2011, that the Louisiana Medical Necessity Review Organization Act entitled him to a third level of review for the

6

denial of his benefits and was not pre-empted by ERISA. This finding, the plaintiff argues, constitutes "some degree of success on the merits" of his claim. The Court disagrees. The Court's power to award attorney's fees is announced in ERISA itself, 29 U.S.C., Section 1132(g)(1), which allows for a grant of attorney's fees in the Court's discretion. The text of the statute provides:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions.
> (1) In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

The essential issue in this litigation is whether the defendants erroneously denied plaintiff's request for benefits related to his stay at Menninger. That determination involves an application of the plan's language to the facts of the case. By contrast, the Court's finding that the MNRO statute entitled plaintiff to another level of review merely clarified the procedural contours of the administrative review process. It did not address the substance of plaintiff's claim. Just because plaintiff is entitled to a level of review he did not receive does not undermine the integrity of the other two, prior levels of review. Thus, this case is markedly different from <u>Hardt</u>, where the district court remanded the case to the plan administrator because the Court thought it "clear that [the plan

administrator's] decision to deny Ms. Hardt long-term disability benefits was not based on substantial evidence." Hardt, 130 S. Ct., at 2154.

*B.*

The Court sees a patent fact issue with respect to whether the individuals involved in reviewing and deciding plaintiff's claim for benefits, Dr. Harop, Dr. Mascarenhas, Dr. Stock, and Crystal Kinney, acted without authority because they were paid by Magellan Health Services, or Magellan HRSC, both entities which are not licensed under the Louisiana MNRO statute.  Plaintiff submits tax documents to support his assertion that these individuals were employed by Magellan Health or Magellan HRSC. Magellan Health disputes that the source of funding is significant.  It provides a declaration from Alexa French, a paralegal at Magellan Health Services, who prepared Magellan Behavioral Health's application for MNRO licensure in Louisiana. She states that these individuals were listed as members of Magellan Behavioral's Physician Advisor Panel when it submitted its MNRO application to the State of Louisiana.  Magellan Health explains that it provides payments to individuals employed by its subsidiary, Magellan Behavioral, pursuant to a management agreement between the two entities.  This disputed fact issue cannot be resolved the by Court on summary judgment.  The Court has already considered this issue before, and found that "a

material fact issue remains in dispute.  The parties dispute whether defendant or whether MBH acted at relevant times."  See Order and Reasons dated 10/19/2010.  The vindictiveness of the parties on both sides of this dispute compels the Court to point all sides to 28 U.S.C. Section 1927, which may well be instructive in this case.

C.

The Court is troubled by Blue Cross Blue Shield's violation of the Protective Order and its admitted failure to file confidential information under seal.  Especially striking is Blue Cross Blue Shield's refusal to remedy the error once brought to its attention.

IT IS ORDERED: Blue Cross Blue Shield shall immediately file under seal any documents which contain confidential information, and which it should have filed under seal at the time the documents were submitted to the Court;

IT IS FURTHER ORDERED: Blue Cross Blue Shield shall certify to this Court that it has taken the above-ordered action once all steps are complete.

To the extent that plaintiff argues in his reply brief that Blue Cross Blue Shield's failure to follow the Protective Order was tortious conduct, the Court denies summary judgment on this record.  Nowhere does the plaintiff state what injuries he received as a result of Blue Cross Blue Shield's breach; nor does

9

he argue that in such a circumstance a showing of injury is unnecessary.  The Court is well aware of the false theatre that has influenced the arguments in this case.  It is an unworthy expense of energy.

Accordingly, IT IS ORDERED: the plaintiff's motion for partial summary judgment is DENIED.

Because the plaintiff has not raised the issue of a third level of review under state law since this Court's Order and Reasons of June 23, 2011, the Court is compelled on this record to hold that plaintiff has waived this issue.

New Orleans, Louisiana, April 10, 2012

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE